## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY VILLAR<br>105 Cedar Avenue<br>Willow Grove, PA 19090 | : CIVIL ACTION<br>:<br>: NO. 2:14-CV-02558-NIQA<br>: |
| Plaintiff, | : |
| v. | : |
| PHILADELPHIA UNIVERSITY<br>4201 Henry Avenue<br>Philadelphia, PA 19144 | : TRIAL BY JURY DEMANDED<br>: |
| and | : FILED |
| JANE DOE, | : MAY 2 3 2014 |
| Defendants | : MICHAEL E. KUNZ, Clerk<br>By _____ Dep. Clerk |

## AMENDED COMPLAINT

Plaintiff, Anthony Villar, by and through his attorney, William Spade,

Esquire, hereby files this Complaint and avers the following:

### I. INTRODUCTION AND NATURE OF ACTION

1. This case arises out of the actions taken and procedures

employed by Defendant Philadelphia University ("Philadelphia University")

concerning allegations made against Anthony Villar, a junior student at

Philadelphia University studying Biopsychology. Anthony Villar was involved

for more than two years in a romantic and sexual relationship with another

Philadelphia University student named Jane Doe. Ms. Doe spent the Fall

semester of 2013 in Denmark in a study abroad program. She was

scheduled to return to Philadelphia on December 13, 2013, and Anthony was

going to pick her up from the airport. The day before, Anthony and Jane Doe had texted each other, discussing what to do upon her arrival the next day, and Anthony offered to make her Chicken Marsala at his apartment, to which Jane Doe enthusiastically agreed. On December 13, 2013, Anthony picked Jane Doe up at Philadelphia International Airport and they returned to his apartment in East Falls, Philadelphia. At his apartment, Anthony offered to give Jane Doe a massage. She agreed and he helped her to remove her clothes. During the massage, Anthony began to give Jane oral sex and then they had consensual sexual intercourse. This was something they had done hundreds of times over the past two years. That night, after the alleged sexual assault, Anthony and Jane drove to her parents house in a suburb of Philadelphia, where they had dinner together, celebrated Jane's return, and enjoyed each other's company. The next day, Jane invited Anthony to dinner with her parents near their home. After dinner, they returned to Jane's house and Anthony informed Jane that he had become romantically involved with another woman, Ruthanna Witherite, while Jane was away in Denmark. Two days later, Ms. Doe filed a complaint against Anthony with Philadelphia University, accusing him of having nonconsensual sex with her. On January 23, 2014, barely more than five weeks after these serious allegations were made, and after denying Anthony Villar's repeated requests for more time to prepare a defense to the charges, Philadelphia University held a perfunctory hearing, found Anthony Villar guilty of sexual misconduct, and expelled him.

2.    When defendant Philadelphia University found Anthony Villar

2

guilty of sexual misconduct, Mr. Villar was not afforded due process and was discriminated against on the basis of his sex/gender. Mr. Villar was rushed into a hearing a mere 37 days after the extremely serious allegation of sexual assault was made against him; he was misled into not participating in the hearing by his accuser, Jane Doe, and Philadelphia University, who falsely informed him that there was an ongoing criminal investigation of him by the Philadelphia Police Department at the time of the hearing; he was denied the effective assistance of any advisor; he was effectively denied cross-examination of his accuser, Jane Doe; and the hearing board announced its decision less than 45 minutes after the abbreviated, sham hearing, reflecting the lack of impartiality and the pre-judgment against an accused male student. Defendant Philadelphia University failed to adhere to its own guidelines and regulations, and the guidelines and regulations themselves are insufficient to enable a male student to have a fair hearing before an impartial tribunal. The decision reached was discriminatory; given the evidence (or lack thereof), a discriminatory bias against males was required for a conclusion of sexual misconduct to be reached and expulsion ordered.

3. Anthony Villar has been greatly damaged by his expulsion: his academic future is severely damaged; the money spent by him and his family to obtain a college education at Philadelphia University lost; and the real sacrifices made by Anthony Villar and his family so that he could obtain a college degree wasted. Anthony Villar therefore brings this action for among other things, a violation of Title IX of the Education Amendments of 1972 and

3

various state laws. He seeks declaratory, monetary and other appropriate relief to redress the intentional violations by defendants Philadelphia University and Jane Doe of his rights under the laws of the United States of America and the Commonwealth of Pennsylvania.

## II.    JURISDICTION

4.    This action is brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 (2011).

5.    Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(1) and (3) and the aforementioned statutory and constitutional provisions.

6.    Jurisdiction over state law claims, based on supplemental jurisdiction, is proper under 28 U.S.C. § 1367.

7.    The amount in controversy, exclusive of interest and costs, exceeds the sum of One Hundred Fifty Thousand ($150,000.00) Dollars.

## III.    VENUE

8.    All the claims herein arose within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involve defendants who reside within the jurisdiction limits. Accordingly, venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2).

## IV.    PARTIES

9.    Plaintiff Anthony Villar is an adult citizen of the United States, who resides at 105 Cedar Avenue, Willow Grove, Pennsylvania 19090.

10.    Defendant Philadelphia University is a private University located at 4201 Henry Avenue, Philadelphia, Pennsylvania 19144. It receives funds

from the federal government.

11.     Defendant Jane Doe is an adult citizen of the United States, who resides in a suburb of Philadelphia, Pennsylvania, in the Eastern District of Pennsylvania.

## V.     FACTS

### A.     The Two-Year Romantic Relationship Between Jane Doe and Anthony Villar.

12.     Anthony Villar and Jane Doe met in September, 2011, when they were both freshman at Philadelphia University and began a romantic relationship shortly thereafter. As part of their relationship, they engaged in sexual intercourse several times per week and spent many nights together in their dormitory rooms and later, during their junior year, at Villar's apartment, which was near the Philadelphia University campus in the East Falls section of Philadelphia.

13.     During the Autumn semester of 2013, Ms. Doe studied abroad in Denmark. She lived in Denmark from September, 2013, to December 13, 2013. During the time that she was away, she and Anthony Villar spoke often by telephone and corresponded by electronic mail and texting.

14.     During the time period that Ms. Doe was in Denmark, Anthony Villar continued to be enrolled in Philadelphia University. During this time, he became involved in a romantic relationship with another Philadelphia University student, Ruthanna Witherite. Mr. Villar intended to tell Jane Doe about the relationship with Ms. Witherite when Ms. Doe returned from Denmark.

5

**B.   The Night of The Alleged Assault**

15.   On December 13, 2013, Jane Doe returned from Denmark, arriving at Philadelphia International Airport in the early evening. She and Anthony Villar had texted each other the day before to discuss the details of him picking her up from the airport and what they intended to do on the evening of December 13, when they returned from the airport. In one exchange, Anthony asked whether Jane wanted sushi or for him to make her Chicken Marsala. Jane replied, "OOOOOO actually I'd rather have something you make :)"

16.   Jane's flight arrived at approximately 6:30 p.m. on December 13, 2013. Anthony picked her up at the airport. As they drove away from the airport, they discussed the fact that Jane's mother was having a small homecoming party for her at the family's house in the suburbs.

17.   They decided to stop at Anthony's apartment before going to Ms. Doe's family's house for the party. At his apartment, Anthony offered to give Jane a massage to relax her because she had been traveling for approximately 20 hours and had been complaining of a sore back. Jane agreed that she would like a massage. Anthony helped Jane take off her clothes. Jane was naked except for her underwear.

18.   During the course of the massage, Jane told Anthony how good it felt. They then began to kiss. Anthony kissed her all over her body and Jane responded positively.

19.   Anthony then removed Jane's underwear and told her he was

6

going to give her oral sex. Jane said he could, but told him to be gentle because she had not been sexually active for the several months she had been in Denmark. While Anthony gave her oral sex, Jane had an orgasm.

20. They then kissed again and Jane performed oral sex on Anthony. Their lovemaking was the same as it had been during the two years that they had been together in a romantic relationship. They then began to have intercourse. The intercourse did not last long, however, because Anthony felt guilty about having become romantically involved with another woman. They attempted intercourse again a little later, but stopped because Jane said that it hurt. At no point during their lovemaking did Jane Doe ever tell Anthony to stop, except at the very end when she said that it was hurting her. At that point, Anthony immediately stopped having intercourse with her.

21. After their lovemaking, Jane Doe took the unusual step for the victim of a sexual assault of bringing her alleged attacker home with her to her parents' house. They drove from East Falls to Jane's parents' house in the suburbs and then spent several hours socializing with Jane's mother and father and two of their acquaintances. The evening included dinner, conversation, and watching a movie together. During both the drive to the suburbs and the hours of socializing at her house, Jane Doe seemed happy and content and never complained to anyone present that she had just allegedly been sexually assaulted. After midnight, Anthony drove home by himself.

**C. The Next Day, Jane Doe, Who Allegedly Had Been Sexually Assaulted By Anthony Villar the Previous Evening, Invited Him To Have Dinner With Her and Her Parents Again.**

22.     The next day, December 14, 2013, Jane Doe texted Anthony, the man who allegedly had sexually assaulted her less than twelve hours earlier, to invite him back up to her suburban town to have dinner with her and her parents, giving him directions to the restaurant at which they would meet.

23.     At approximately 5:00 p.m., Anthony met Jane and her parents at a restaurant near Jane's parents' house They had dinner together. There was amiable conversation and laughter. After dinner, Jane Doe drove with Anthony, the man who had allegedly sexually assaulted her less than 24 hours earlier, back to her house while her parents drove in a separate car.

24.     Back at the house, Anthony and Jane talked some more at the kitchen table. At one point, Jane leaned into Anthony's ear and whispered that she wanted him. Jane's parents returned home and went to a separate part of the house.

25.     As Anthony and Jane talked, he saw her phone vibrate and saw that Ruthanna Witherite had sent Jane a text. Anthony picked up Jane's phone and put it in his pocket. Anthony then told Jane that he had become romantically and sexually involved with Ruthanna while Jane was studying abroad in Denmark. Jane was silent. Anthony then apologized for having become involved with Ruthanna, put Jane's phone on the table, and left.

**D. Two Days After Learning That Her Boyfriend, Anthony Villar, Had Become Involved With Another Woman, Jane Doe Accused Him Of Sexual Assault To Defendant Philadelphia University, Which Then Rushed Anthony To A Hearing, At Which They Deceived Him Into Believing That There Was An Active Criminal Investigation With Him As The Target And Denied Him Due Process And A Fair and Unbiased Hearing Of Jane Doe's False Allegation.**

26.     On Monday, December 16, 2013, Jane Doe contacted

Dean Mark Govoni of Philadelphia University and reported that Anthony had

sexually assaulted her on Friday, December 13, 2013.

27.     Later in the day on December 16, 2013, Dean Govoni sent an

email to Anthony stating that he needed to meet with him on an urgent matter.

Anthony telephoned Dean Govoni and informed him that he had a final

examination in one hour. Anthony requested that Dean Govoni tell him over

the telephone why he needed to meet with him. Dean Govoni refused.

Anthony was left to take his final examination in a distracted and emotionally

upset state of mind. After he took his final examination, Anthony met with

Dean Govoni, who informed him of Jane Doe's accusation. Dean

Govoni then gave Anthony a brief description of the procedures that would be

followed, specifically referring Anthony to the Sexual Misconduct Policy

section of the Philadelphia University Student Handbook. Anthony was

informed among other things that he could review the "investigative case file"

before the hearing, but he would not be permitted to have a copy of any of the

documents that constituted evidence in the case. He was also informed that

he could bring a "support person" to the hearing, but that the support person

could not "play an active role in the hearing, he/she serves as a second set of

ears."

28. The hearing was scheduled for January 23, 2014, a mere five weeks after this most serious of allegations had been lodged against Anthony Villar. This extremely abbreviated time period between the notification of the charges against him and the hearing of those charges denied Anthony Villar the fundamental due process right of being able to effectively and completely investigate the accusations and prepare a defense to them.

29. Philadelphia University's judicial procedures are woefully inadequate to provide male students accused of sexual assault due process in their investigation of and defense against these extremely serious charges, which can have adverse and extremely destructive consequences for the male student's entire life and economic future. For instance, Philadelphia University's judicial procedures deny the accused the right to legal counsel, providing instead that, "[b]ecause cases are often stressful and overwhelming . . . the respondent may request that a personal friend or associate accompany them at the hearing. This person has no role other than to advise and to provide moral support to the student and may not address the judicial hearing board." Thus, when a male student faces charges that can permanently destroy his reputation and future earning ability, he is permitted to have a friend present to provide moral support, but not a trained professional to defend him. Moreover, the accused is not permitted to have and possess copies of any of the documents being used to convict him prior to the hearing and thus is denied the opportunity to meaningfully investigate

and test the evidence against him. Finally, the standard of proof pursuant to which a male student may be found guilty of sexual assault is a "preponderance of the evidence," a standard of proof much lower than the "beyond a reasonable doubt" standard used in criminal cases in United States courts.

30.    On January 23, 2014, Anthony appeared for the hearing with an attorney, whom he had retained. Philadelphia University informed Anthony Villar that the hearing would be recorded and that the entire file, including the transcript of the hearing, could be made available through subpoena to any state, federal, or local law enforcement agency. Upon reviewing the investigation file, the attorney noticed a notation that Jane Doe had reported the alleged sexual assault to the Philadelphia Police Department. There was a name of a specific Philadelphia Police Detective in the file. Mr. Villar's attorney immediately informed Dean Mark Govoni that Mr. Villar could not participate in the hearing, since anything that he said at the recorded hearing could be used against him by the Philadelphia Police Department and District Attorney's Office should they at some future point decide to bring criminal charges against him. Mr. Villar's attorney requested a postponement of the hearing until Mr. Villar was informed by Philadelphia County law enforcement authorities that he would not be charged with a crime. He further told Dean Govoni that to proceed with the hearing while Anthony was under active criminal investigation would deny Anthony due process since he would not be able to defend himself. Philadelphia University denied the

11

postponement request. Dean Govoni told Anthony Villar that the hearing would proceed "with Anthony or without him." Thus, defendant Philadelphia University had actual notice of its defective sexual misconduct hearing procedures and refused to correct the defects. Defendant Philadelphia University was deliberately indifferent to plaintiff Anthony Villar's rights.

31. The hearing proceeded. The Sexual Misconduct Hearing Board, which consisted of one faculty member, one student, and one administrative staff member (two women and one man), conducted a perfunctory hearing that lasted less than 60 minutes. During that hearing, Anthony could not say anything in his own defense or cross-examine Jane Doe, due to his belief that he was the target of a criminal Investigation. At the end of the hearing, the Board "deliberated" for less than 45 minutes and then announced its pre-ordained decision of "guilty." The Board then announced the punishment as expulsion. The Board issued no written opinion documenting the reasons for its finding.

32. Anthony Villar later learned though inquiries made to the Philadelphia Police Department that no criminal complaint had ever been lodged against him by Jane Doe. Upon information and belief, the notation in the Philadelphia University investigation file was a complete fabrication.

## VI. AGREEMENTS, REPRESENTATIONS, COVENANTS & WARRANTIES BETWEEN ANTHONY VILLAR AND PHILADELPHIA UNIVERSITY

33. Prior to his enrollment at Philadelphia University, Anthony Villar was a successful high school student at Upper Moreland High School in Willow Grove, Pennsylvania. When he graduated, he had a 3.65 grade point average in a course of study that included Advanced Placement English, Biology, History, and Psychology. He was a member of the National Honor Society, and had earned several awards, including the Presidential Award. He had a bright future in front of him. In addition to Philadelphia University, he was also accepted to Temple University.

34. After weighing the various factors and considerations of each college, Anthony Villar made a conscious and informed decision to pursue a college education at Philadelphia University, and to begin classes for the 2011-12 academic year.

35. Upon his acceptance, defendant Philadelphia University provided Anthony Villar with a copy of its Student Handbook and The University Catalogue. These documents, as well as documents that they reference, are readily available on Philadelphia University's web site, which also contains other policies, regulations, and representations made by Philadelphia University. The Philadelphia University Handbook states, among other things, that:

"Statement of Nondiscrimination"

Philadelphia University does not discriminate on the basis of race, color, **sex,** age, religion, national origin, marital status, sexual orientation, or

13

disability in its admissions, education programs, activities, or employment practices. This policy is in accordance with state and federal laws, including Title IX of the Education Amendments of 1972, and Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990.

See Philadelphia University Student Handbook, pg. 2 (emphasis added).

36.    The Philadelphia University Student Handbook also contains a

Commitment to Diversity, which states, in pertinent part, that:

Philadelphia University is fully committed to making diversity an integral part of its mission . . . The University Community respects the uniqueness and worth of each member . . . Factors such as disability, religion, **gender,** sexual orientation, and ethnic background all make up differences. This diversity enriches the educational experience of every individual . . . We therefore reject stereotyping, prejudice, harassment, and **discrimination for any reason.**

See Philadelphia University Student Handbook, pg. 3 (emphasis added).

37.    Philadelphia University represented and agreed, in its Student

Handbook, that its Sexual Misconduct Board members would be adequately

trained in "matters related to sexual misconduct." Philadelphia University

Student Handbook, Community Standards and Judicial System, 4. The

Sexual Misconduct Board.

38.    Philadelphia University represented and agreed, in its Student

Handbook, that it would schedule a hearing for students accused of violations

of The Community Standards "a reasonable time" after the complaint was

reported." Philadelphia University Student Handbook, Community Standards

and Judicial System, Judicial Procedures for Complaints Referred to Judicial

Officers. 1. Notice.

39.    Philadelphia University represented and agreed, in its Student

Handbook, that it would conduct an investigation of the complaint, gather

14

evidence, and interview any parties involved in or witness to the matter.
Philadelphia University Student Handbook, Community Standards
and Judicial System, Judicial Procedures for Complaints Referred to Judicial
Officers. 2.(c) Hearing Protocols.

40.     Philadelphia University represented and agreed, in its Student
Handbook, that it would present to the student accused of violating the
Community Standards any evidence pertaining to the allegations of the
violation. Philadelphia University Student Handbook, Community Standards
and Judicial System, Judicial Procedures for Complaints Referred to Judicial
Officers. 2.(d) Hearing Protocols.

41.     Philadelphia University represented and agreed, in its Student
Handbook, that a student accused of violating the Community Standards
would have an opportunity to present and cross-examine witnesses.
Philadelphia University Student Handbook, Community Standards
and Judicial System, Judicial Procedures for Complaints Referred to Judicial
Hearing Boards. 4. Pre-Hearing Procedures.

42.     Philadelphia University represented and agreed, in its Student
Handbook, that a student accused of violating the Community Standards
would be permitted to exchange information with his accuser no later than 5
days before the hearing and would be given copies of all information relevant
to the incident that would be used at the hearing. Philadelphia University
Student Handbook, Community Standards and Judicial System, Judicial
Procedures for Complaints Referred to Judicial Hearing Boards. 4. Pre-

Hearing Procedures.

43.    Philadelphia University represented and agreed, in its Student
Handbook, that a student accused of violating the Community Standards
would be permitted "ample opportunity to review all evidence prior to the
hearing." Philadelphia University Student Handbook, Community Standards
and Judicial System, Judicial Procedures for Complaints Referred to Judicial
Hearing Boards. 6. Evidence.

44.    Philadelphia University represented and agreed, in its Student
Handbook, that a student who was found to have violated the Community
Standards by a Sexual Misconduct Board would have the right to appeal the
Board's decision and, as long as the appeal was in writing and met the criteria
set forth in the Appeals section of the Student Handbook, the student would
have the right to a re-hearing of his case or further investigation of the
complaint and an amendment of the decision and/or sanction. Philadelphia
University Student Handbook, Community Standards and Judicial System,
Judicial Procedures for Complaints Referred to Judicial Hearing Boards. 10.
Appeals.

## FIRST CAUSE OF ACTION
## VIOLATION OF TITLE IX OF THE EDUCATION
## AMENDMENTS OF 1972, 20 U.S.C. §§ 1681-1688 (2011) BY
## DEFENDANT PHILADELPHIA UNIVERSITY

45.    The allegations set forth in paragraphs 1-44 are incorporated
herein by specific reference as if fully set forth.

46.    Title IX of the Education Amendments of 1972 states in

16

pertinent part that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ." 20 U.S.C. § 1681(a).

47. Title IX applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX, even though there is very little direct federal funding of school sports.

48. Upon information and belief, defendant Philadelphia University receives federal funding under Title IX, 20 U.S.C. §§ 1681-1688 (2011).

49. As a Title IX recipient, Philadelphia University is required to comply with the requirements of Title IX as well as those of the regulations promulgated thereunder by the Department of Education.

50. These regulations require each school receiving Title IX funds to, "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by [Title IX or its regulations]." 34 C.F.R. 106.8(b) (2014).

51. The regulations further require that a school's procedures must accord "due process to both parties involved . . ." *See* Title IX (2001) "Revised Sexual Harassment Guidance: Harassment of Students By School Employees, Other Students, Or Third Parties" (U.S. Department of Education, Office for Civil Rights, January 19, 2001) (notice of publication at 66 Fed. Reg. 5512), at pg. 22.

52.     Philadelphia University's sexual misconduct and disciplinary policies, as written and as implemented in Anthony Villar's case, are not equitable and do not accord due process and equal protection to the accused. Philadelphia University's sexual misconduct and disciplinary policies and procedures discriminate against male students accused of sexual misconduct and/or sexual assault based upon their gender/sex.

53.     Philadelphia University has deprived Anthony Villar, based upon his sex/gender, of his rights to due process and equal protection of the laws, through its sexual misconduct grievance procedures, which do not afford the accused male students due process in defending against sexual assault and other sexual misconduct charges.

54.     Defendant Philadelphia University conducted its investigation and hearing regarding the charges of sexual assault made by Jane Doe against Anthony Villar in a biased and fundamentally unfair manner. Both the investigation and the hearing were flawed and resulted in an erroneous outcome, *i.e.,* an erroneous finding that Anthony Villar had sexually assaulted Jane Doe and committed sexual misconduct. The particular circumstances that prove that gender bias was the motivating factor behind the erroneous outcome include, but are not limited to the following:

(a) defendant Philadelphia University placed absolutely no value on the fact that Ms. Doe's allegations were supported by no physical evidence, such as a rape kit examination records, DNA samples, crime scene analysis records, or even self-taken photos of injuries;

18

(b) defendant Philadelphia University placed absolutely no value on the fact that there were no eyewitness accounts of the alleged assault;

(c) defendant Philadelphia University took no steps to investigate the gaping holes in Ms. Doe's credibility, such as the fact that she invited Anthony Villar to her parents' house immediately after the alleged assault, socialized with him, her parents, acquaintances of her parents, and never mentioned the fact that she had just been assaulted; and that she invited him back to her house again the day after the alleged assault to socialize with her and her parents and again made no mention of the alleged assault;

(d) defendant Philadelphia University placed absolutely no value on the fact that Jane Doe only reported a "sexual assault" **AFTER** learning that Anthony had been unfaithful to her;

(e) defendant Philadelphia University rushed Anthony Villar to a hearing less than five (5) weeks after the allegations were made, even though it had not conducted a complete, thorough and unbiased investigation of the allegations and had not gathered all relevant evidence;

(f) defendant Philadelphia University intentionally denied Mr. Villar the right to defend himself at the Sexual Misconduct Board hearing by falsely reporting that Mr. Villar was under active criminal investigation by the Philadelphia Police Department;

(g) Philadelphia University also took no account of the very obvious motivation that Ms. Doe had to fabricate the charges against Mr. Villar, given that her complaint came less than 48 hours after she found out that he was

19

romantically involved with another woman;

(h) The hearing on the charges against Anthony Villar lasted less than 60 minutes and when it concluded, the Sexual Misconduct Hearing Board "deliberated" for less than 45 minutes and then announced its pre-ordained decision of "guilty." The Board then announced the punishment as expulsion. The Board issued no written opinion documenting the reasons for its finding.

55.   All of the actions taken by defendant Philadelphia University set forth *supra* in Paragraph 54 are sufficient to permit a factfinder to draw a reasonable inference that Philadelphia University discriminated against Anthony Villar based upon his gender when it engaged in a flawed disciplinary process that resulted in the erroneous outcome that he had committed sexual misconduct and that defendant Philadelphia University was deliberately indifferent to Villar's rights. *See Wells v. Xavier University,* 2014 WL 972172 (S.D. Ohio March 12, 2014).

56.   Defendant Philadelphia University imposed sanctions on Anthony Villar that were disproportionate to the severity of the charges levied against him and without any consideration of his solid academic record and without providing any written summary setting forth the basis of its findings and the basis for the punishment. The unduly severe sanction of expulsion was also evidence of the fact that defendant Philadelphia University selectively enforced its policies and procedures against Anthony Villar based upon his gender.

57.   Upon information and belief, the fundamental unfairness and

discrimination based upon gender/sex that characterized Anthony Villar's disciplinary process, as well as the erroneous outcome, are part of a pattern of decision-making by defendant Philadelphia University that discriminates against male students accused of sexual misconduct at Philadelphia University based solely upon their sex/gender. Defendant Philadelphia University, in the manner in which it investigates, adjudicates, and hears appeals of male students accused of sexual misconduct creates an environment in which the male student is so fundamentally denied due process as to be virtually assured of a finding of guilt regardless of the evidence, or lack thereof. Such a biased and fundamentally unfair process excludes male students from participation in and denies them the benefits of Philadelphia University's educational programs, and subjects them to discrimination under those educational programs.

58. As a direct and proximate result of Philadelphia University's enforcement of these discriminatory policies and procedures, which violate Title IX, and its failure to comply with the other requirements under Title IX with respect to its sexual misconduct disciplinary procedures, Mr. Villar has been excluded from participation in and denied the benefits of Philadelphia University's educational programs in violation of Title IX, and has suffered damages including, but not limited to, having his permanent Philadelphia University academic record contain an improper and untrue conviction and/or finding of guilt for sexual misconduct (assault), being unable to be accepted to and enroll in another university or college of similar or better reputation than

Philadelphia University, actual and permanent damage to his reputation and standing in the community, and monetary losses.

**WHEREFORE**, Plaintiff Anthony Villar demands judgment against Defendant Philadelphia University with the following relief:

a. Compensatory damages in an amount in excess of $150,000.00;

b. Reasonable attorney's fees and costs;

c. Expenses, costs and disbursements; and

d. Such other and further relief as the Court deems reasonable and just.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT
## AGAINST DEFENDANT PHILADELPHIA UNIVERSITY

59. The allegations set forth in paragraphs 1-58 are incorporated herein by specific reference as if fully set forth.

60. Defendant Philadelphia University has committed numerous breaches of the parties' contract and violations of federal and state law.

61. Anthony Villar's education and future career have been severely damaged. Without appropriate redress, the unfair and erroneous outcome of the sexual misconduct disciplinary hearing conducted by defendant Philadelphia University will continue to cause irreversible and irreparable damages to Anthony Villar into the future without end.

62. As a result of the foregoing, there exists an actual, judiciable controversy between the parties with respect to the outcome, permanency,

22

and future handling of Anthony Villar's formal student record at Philadelphia University.

63. By reason of the foregoing, Anthony Villar requests, pursuant to 28 U.S.C. § 2201, a declaration that: (i) the outcome and findings made by Philadelphia University at Anthony Villar's sexual misconduct disciplinary hearing be reversed; (ii) Anthony Villar's reputation be restored; (iii) Anthony Villar's disciplinary record be cleared of the false and untrue finding of sexual misconduct by defendant Philadelphia University; specifically that the finding that he was guilty of sexual misconduct involving a sexual assault of Jane Doe, be expunged from his record; (iv) the record of Anthony Villar's expulsion from Philadelphia University be removed; (v) any record of Anthony Villar's disciplinary investigation and hearing regarding the alleged sexual assault of Jane Doe be permanently destroyed; and (vi) that Philadelphia University's rules, regulations, and guidelines are unconstitutional as applied.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT
## AGAINST DEFENDANT PHILADELPHIA UNIVERSITY

64. The allegations set forth in paragraphs 1-63 are incorporated herein by specific reference as if fully set forth.

65. A contractual relationship, either express or implied, existed between Philadelphia University and Anthony Villar. The contract was formed by Mr. Villar's payment of tuition and fees to Philadelphia University and by the terms set forth in Philadelphia University's Student Handbook, University Catalogue and other policies, regulations, and representations made by

23

Philadelphia University on its web site, which were all deemed part of that contract.

66. Pursuant to Title IX, Philadelphia University was required to adopt sexual misconduct and disciplinary policies and procedures that were equitable and accorded due process and equal protection to the accused in sexual misconduct cases. Philadelphia University represented in its Student Handbook, University Catalogue, and other policies, regulations, and representations on its web site that it complied with the requirements of Title IX and had in place disciplinary policies and procedures that accorded due process and equal protection to the accused in sexual misconduct cases. However, Philadelphia University did not act in accordance with the terms and representations in its Student Handbook, University Catalogue, and other policies, regulations, and representations on its web site in investigating and adjudicating complaints of sexual misconduct and violations of Philadelphia University's Community Standards, policies, and regulations, and in deciding appeals that challenged disciplinary decisions. Philadelphia University's failure to act in accordance with the terms and representations made in its Student Handbook, University Catalogue, and other policies, regulations, and representations on its web site breached its agreement that it would not engage in discrimination for any reason.

67. Defendant Philadelphia University breached the express and/or implied terms of its contract with Anthony Villar. Specifically, Philadelphia University breached its contract with Anthony Villar by failing to comply with

24

the policies and procedures it claimed to have in place in its Student

Handbook, University Catalogue, and other policies, regulations, and

representations on its web site for investigating and adjudicating complaints

of sexual misconduct. The specific ways that Philadelphia University

breached the terms of its contract with Anthony Villar include, but are not

limited to the following:

(a) failing to have, as it represented and agreed in its Student

Handbook, Sexual Misconduct Board members who were adequately

trained in "matters related to sexual misconduct;"

(b) failing to schedule, as it represented and agreed in its Student

Handbook, a hearing on the charges against Anthony Villar "a reasonable

time" after the complaint was reported with the result that Anthony Villar was

not able to properly investigate the charges against him or adequately

prepare for the hearing;

(c) failing to conduct, as it represented and agreed in its Student

Handbook, an investigation of the complaint, gather evidence, and interview

any parties involved in or witness to the matter;

(d) failing to present to Anthony Villar, as it represented and agreed in

its Student Handbook, any evidence pertaining to the allegations of the

violation.

(e) failing to afford Anthony Villar, as it represented and agreed in its

Student Handbook, an opportunity to present and cross-examine witnesses at

his hearing.

(f) failing to afford Anthony Villar, as it represented and agreed in its Student Handbook, the opportunity to exchange information with his accuser no later than 5 days before the hearing and to give to Anthony Villar copies of all information relevant to the incident that would be used at the hearing.

(g) failing to permit Anthony Villar, as it represented and agreed in its Student Handbook, "ample opportunity to review all evidence prior to the hearing."

(h) failing to afford Anthony Villar, as it represented and agreed in its Student Handbook, the right to a re-hearing of his case or further investigation of the complaint and an amendment of the decision and/or sanction after he had filed a proper appeal of the Sexual Misconduct Board's decision.

68.     Defendant Philadelphia University does not have a provision in its Student Handbook, University Catalogue, or any other of its policies, regulations, and representations referenced on its web site, which were all deemed part of the contract between Anthony Villar and Philadelphia University, that explicitly insulates its decisions made in disciplinary proceedings from review by state and federal courts. To the extent that Philadelphia University does have such a provision in any of the afore-mentioned documents, the provision is ambiguous.

69.     As a direct, foreseeable, and proximate result of these breaches by defendant Philadelphia University, Anthony Villar sustained tremendous damages, including, without limitation, emotional distress, loss of educational opportunities, reputational damages, economic injuries, and other direct and

consequential damages.

**WHEREFORE**, Plaintiff Anthony Villar demands judgment against Defendant Philadelphia University for compensatory damages in an amount in excess of $150,000.00 plus interest, costs, attorney's fees and such other and further relief as the Court deems reasonable and just.

## FOURTH CAUSE OF ACTION
### DEFAMATION
### AGAINST DEFENDANTS PHILADELPHIA UNIVERSITY AND JANE DOE

70.    The allegations set forth in paragraphs 1-69 are incorporated herein by specific reference as if fully set forth.

71.    Philadelphia University and Jane Doe each made communications about Anthony Villar that were defamatory in nature.

72.    Specifically, each stated verbally and in writing that Anthony Villar was the perpetrator of a criminal offense involving serious sexual misconduct -- sexual assault -- on Doe, even though they knew the allegation was false, or with reckless indifference to the truth or falsity of said allegation.

73.    The defamatory communications tended to harm and did harm the reputation of Anthony Villar so as to lower him in the estimation of the community and to deter third persons from associating with him.

74.    The defamatory communications were intended to, and did, convey to third persons Anthony Villar's guilt of a serious sexual criminal offense involving moral turpitude.

75.    Philadelphia University and Doe intended not only to deprive Villar of his good name, and to bring him into scandal and disrepute amongst

27

his neighbors and peers, but also to limit Villar's future educational and employment prospects.

76.     The defamatory communications tended to, and did, blacken Villar's reputation and exposed him to public hatred, contempt and ridicule.

77.     The allegations against Villar were so inherently improbable that only a reckless and dishonest person would have conveyed them as there were obvious reasons to doubt Doe's veracity and the accuracy of her allegation.

78.     The defamatory communications were not statements of mere opinion.

79.     The defamatory communications were published in that they were made to numerous third parties. They included Doe's statement to Dean Mark Govoni on December 16, 2013, that Anthony Villar had sexually assaulted her. They also included the same allegations made to the Sexual Misconduct Board. Finally, they also consisted of Doe and Philadelphia University making the same false and malicious statements to numerous of Anthony Villar's fellow Philadelphia University students, peers, and professors. Philadelphia University continues to publish defamatory communications about Anthony Villar to third persons outside Philadelphia University.

80.     The defamatory communications were malicious, reckless, and negligently made.

81.     The defamatory communications were not justifiably protected

by any privilege; or, in the alternative, if they were protected by a privilege, it was abused.

82. The defamatory communications referenced Villar by name to ensure that those who received the communications knew that they referred and applied to Anthony Villar, and the recipients of the defamatory communications understood that they applied to Villar.

83. All persons receiving the communications understood the defamatory meaning of the communications. All persons receiving the communications believed that Anthony Villar had committed a serious criminal offense involving serious sexual misconduct -- sexual assault -- on Doe.

84. Anthony Villar was specially harmed by the publication of the defamatory communications. They adversely affected his fitness for the conduct of lawful business.

85. Anthony Villar suffered actual loss to his reputation and personal humiliation and anguish.

86. The defamatory communications led the audience to conclude that Anthony Villar lacked honor and integrity, was a criminal, and have grievously fractured his standing in respectable society.

87. Philadelphia University and Doe's conduct was wanton, reckless, willful, malicious, and oppressive, demonstrating reckless indifference to the rights and interests of Villar, so as to warrant an award of punitive damages.

**WHEREFORE**, Plaintiff Anthony Villar demands judgment against Defendants Philadelphia University and Jane Doe, jointly and severally, for compensatory damages in an amount in excess of $150,000.00 plus interest, punitive damages, costs, attorney's fees and such other and further relief as the Court deems reasonable and just

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST DEFENDANTS PHILADELPHIA UNIVERSITY
## AND JANE DOE

88.     The allegations set forth in paragraphs 1-87 are incorporated herein by specific reference as if fully set forth.

89.     At all times material to this Complaint, defendants Jane Doe and Philadelphia University, acting through its agents, servants, and employees, did by extreme, outrageous, intentional, willful, malicious, and reckless conduct humiliate, embarrass, shock, and emotionally damage Anthony Villar.

90.     Philadelphia University and Jane Doe intentionally made public statements which were blatantly false and untrue and took actions based upon that false information to falsely portray Anthony Villar as a sex offender, which was not true and caused him severe anxiety, depression, and emotional distress.

91.     Philadelphia University and Jane Doe intentionally made public statements which were blatantly false and untrue and took actions based upon that false information to falsely portray Anthony Villar as a sex offender, which was not true and caused him severe anxiety, depression, and emotional distress as the result of unjustly being found guilty of sexual

30

misconduct and being expelled from Philadelphia University and not being able to complete his college education and go on to earn a living, to all of which he had looked forward.

92. Philadelphia University and Jane Doe's actions further caused Anthony Villar extreme anxiety, emotional distress, and depression because for close to two months he believed, based upon the intentional fabrications and lies of Philadelphia University and Doe, that he was the target of a criminal investigation by the Philadelphia Police Department and/or the Philadelphia District Attorney's Office. He literally lived in fear that the police would knock at his door, arrest, and jail him. These fears caused him severe and extreme emotional distress.

93. As a direct and proximate result of the aforementioned extreme, outrageous, intentional, willful and malicious conduct of Philadelphia University and Doe, Anthony Villar suffered and will continued to suffer, among other things, severe emotional distress, mental anguish, embarrassment, and humiliation, all of which may be permanent in nature.

94. Philadelphia University and Doe's conduct was wanton, reckless, willful, malicious, and oppressive, demonstrating reckless indifference to the rights and interests of Anthony Villar, so as to warrant an award of punitive damages.

**WHEREFORE**, Plaintiff Anthony Villar demands judgment against Defendants Philadelphia University and Jane Doe, jointly and severally, for compensatory damages in an amount in excess of $150,000.00 plus interest,

punitive damages, costs, attorney's fees, and such other and further relief as
the Court deems reasonable and just.

## SIXTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## AGAINST DEFENDANTS PHILADELPHIA UNIVERSITY
## AND JANE DOE

95.    The allegations set forth in paragraphs 1-94 are incorporated
herein by specific reference as if fully set forth.

96.    At all times material hereto, Philadelphia University and Jane
Doe acted in a negligent manner for the reasons set forth above as a direct
and proximate result of which Plaintiff Anthony Villar suffered and will
continue to suffer, *inter alia*, severe emotional distress, mental anguish,
embarrassment and humiliation, all of which may be permanent in nature.

**WHEREFORE**, Plaintiff Anthony Villar demands judgment against
Defendants Philadelphia University and Jane Doe, jointly and severally, for
compensatory damages in an amount in excess of $150,000.00 plus interest,
costs, and such other and further relief as the Court deems reasonable and
just.

## SEVENTH CAUSE OF ACTION
## (UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73
## Pa. C.S.A. § 201-1, et seq.)
## AGAINST DEFENDANT PHILADELPHIA UNIVERSITY

97.    The allegations set forth in paragraphs 1-96 are incorporated
herein by specific reference as if fully set forth.

98.    At all times material hereto, Philadelphia University offered for

32

sale to the public, educational services. Plaintiff Anthony Villar purchased,

*inter alia,* educational services from Philadelphia University for which he

remitted payment in the form of tuition and fees.

99.     In connection with the sale of its educational services and

collection of tuition, fees and costs related thereto, Philadelphia University

committed various unfair and deceptive acts and practices in violation of the

Unfair Trade Practices and Consumer Protection Law 73 Pa. C.S.A. § 201-1,

et seq. ("UTPCPL"), including, but not limited to:

> a.     Representing, warranting and guaranteeing in writing that Philadelphia University trained its employees and agents in the proper and unbiased investigation and adjudication of complaints of sexual misconduct, when in fact it had not;
>
> b.     Representing that Anthony Villar would receive a fair and impartial hearing in connection with any allegations of sexual misconduct, when he would not;
>
> c.     Representing that Anthony Villar would receive adequate notice of and due process in connection with allegations of sexual misconduct, when he would not; and,
>
> d.     misrepresenting Philadelphia University's compliance with Title IX;

100.   Anthony Villar purchased, *inter alia,* educational services from

Philadelphia University for which he remitted payment in the form of tuition

and fees. In purchasing educational services from Philadelphia University

and in entering into his agreement with Philadelphia University, Anthony Villar

justifiably relied upon the various warranties and misrepresentations of

Philadelphia University.

33

101. Philadelphia University's unfair and deceptive conduct constituted untrue representations of the characteristics and benefits of Philadelphia University's educational services; constituted untrue representations that Philadelphia University's educational services were of a particular standard or quality; constituted a failure to comply with the terms of a written guarantee or warranty; and constituted deceptive conduct which created a likelihood of confusion and misunderstanding – all within the meaning of §3 of the UTPCPL and §§2(4)(v), (vii), (xiv) and (xxi) of the UTCPL.

102. Anthony Villar's justifiable reliance upon the the various warranties and misrepresentations of Philadelphia University, caused him to suffer the following losses, among others: the money he paid to Philadelphia University in tuition and fees; the loss of a college education; the loss of a college degree; the ability to obtain professional employment. Mr. Villar's justifiable reliance upon the various warranties and misrepresentations of Philadelphia University also caused him to suffer injury to his reputation, which resulted from the erroneous outcome of the disciplinary hearing, *i.e.*, that he had committed sexual misconduct.

**WHEREFORE,** Plaintiff Anthony Villar demands that judgment be entered in his favor and against Defendant Philadelphia University for the following relief:

(a) Find, determine and declare that Philadelphia University's business practices violate the UTPCPL;

34

(b)    Enjoin Philadelphia University from continuing to investigate and adjudicate claims of sexual misconduct in the manner prescribed by the Student Handbook;

(c)    Award actual and/or statutory damages including attorney's fees and costs; and,

(d)    Grant such any and other further relief that is just and proper under the circumstances.

## EIGHTH CAUSE OF ACTION .
## (INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS) AGAINST DEFENDANT JANE DOE

103.    The allegations set forth in paragraphs 1-102 are incorporated herein by specific reference as if fully set forth.

104.    Anthony Villar has the right to pursue his contractual relationships free from interference on the part of other persons.

105.    At all times material hereto, defendant Jane Doe did willfully, maliciously, and improperly interfere with an existing contract between Anthony Villar and Philadelphia University by repeatedly meeting with Philadelphia University agents, servants, and/or employees and leveling false accusations against Villar that he had committed a serious sexual offense against her – sexual assault -- which resulted in his expulsion from Philadelphia University.

106.    Jane Doe had no privilege, justification or legitimate interest for interfering with the contract between Villar and Philadelphia University.

107. Jane Doe, who intentionally and improperly interfered with the performance of this contract, is subject to liability.

108. In intentionally accusing Anthony Villar of sexual assault, Jane Doe was giving false information to Philadelphia University, which Doe knew to be false.

109. As a direct and proximate result of Jane Doe's intentional interference with the contract, Villar suffered expulsion from Philadelphia University, and financial harm stemming therefrom.

110. Jane Doe's conduct was wanton, reckless, willful, malicious and oppressive, demonstrating reckless indifference to the rights and interests of Anthony Villar, so as to warrant an award of punitive damages.

**WHEREFORE**, Plaintiff Anthony Villar demands judgment against Defendant Jane Doe for compensatory damages in an amount in excess of $150,000.00 plus interest, punitive damages, costs, attorney's fees and such other and further relief as the Court deems reasonable and just.

DATED:  May 23, 2014

William Spade, Esquire
Pa. Attorney No. 58965
Law Offices of William Spade
1525 Locust Street
Suite 1400
Philadelphia, PA  19102

Counsel for Plaintiff,
ANTHONY VILLAR

## JURY DEMAND

Plaintiff demands a jury trial as to each Defendant and as to each

count.

_____

William Spade
Counsel for Plaintiff,
ANTHONY VILLAR